Christopher Wiest (*pro hac vice, pending*)
KY Bar No. 90725; OH Bar No. 0077931
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
859/486-6850 (v)
513/257-1895 (c)
859/495-0803 (f)
*chris@cwiestlaw.com*

Thomas Amodio, ABA No. 8511142
REEVES AMODIO LLC
500 L Street, Suite 300
Anchorage, AK 99501
Telephone: (907) 222-7100
Facsimile: (907) 222-7199
*tom@reevesamodio.com*
Co-counsel for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA LIBERTARIAN PARTY | : |
| AND | : |
| JON WATTS | : |
|     Plaintiffs | : |
| v. | : |
| GAIL FENUMIAI<br>In her official capacity as Director of Elections | :    **PLAINTIFFS' VERIFIED COMPLAINT**<br>    **FOR DECLARATORY AND**<br>:    **INJUNCTIVE RELIEF** |
| AND | : |
| KEVIN MEYER<br>In his official capacity as Lt. Governor | :    CIVIL ACTION NO.<br>    3:20-cv-__00127_____ |
|     Defendants | : |

1. Plaintiff, Alaska Libertarian Party ("ALP"), is the third largest political party in the State of Alaska. As of November 3, 2019, it had 7,251 registered voters.

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
*Alaska Libertarian Party et al. v. Gail Fenumiai, et al.*, No. 3:20-cv-_____
PAGE 1

Case 3:20-cv-00127-JWS    Document 1    Filed 06/03/20    Page 1 of 10

2. Plaintiff Jon Watts, is the duly elected Chair of the ALP, and a qualified voter and registered voter in Alaska.

3. Defendant Gail Fenumiai is the duly appointed Director of Elections, who is the chief elections officer of the state pursuant to A.S. 15.80.110(4) and A.S. 15.10.105. She is sued in her official capacity only.

4. Defendant Kevin Meyer is the duly elected Lt. Governor of Alaska, and who, pursuant to A.S. 15.10.105(a), controls and supervises the Division of elections.

5. Collectively, Defendants Meyer and Fenumiai actively enforce and administer the Alaska election laws challenged herein, and are statutorily charged with this enforcement and administration.

## JURISDICTION AND VENUE

6. Subject matter jurisdiction over the claims and causes of action asserted by Plaintiffs in this action is conferred on this Court pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, 28 U.S.C. §1331, 28 U.S.C. § 1343, 28 U.S.C. §§ 2201 and 2202, and other applicable law.

7. Venue in this District and division is proper, pursuant to 28 U.S.C. §1391 and other applicable law, because all of the deprivations of Plaintiffs' Constitutional Rights occurred in boroughs within this District, and future deprivations of their Constitutional Rights are threatened and likely to occur in this District.

## Background

8. There are three methods for a political party to obtain party ballot access insofar as the Presidential race is concerned:

   a. first, that they be recognized as a "political party" under A.S. 15.80.10(27) by achieving 3% of the vote in the preceding Governor's race, or, if that race is not

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
*Alaska Libertarian Party et al. v. Gail Fenumiai, et al.*, No. 3:20-cv-_____
PAGE 2

Case 3:20-cv-00127-JWS   Document 1   Filed 06/03/20   Page 2 of 10

on the ballot, the United States Senate race is used, and if that race is not on the ballot, then the United States House race is used;

    b. <u>second,</u> that they be recognized as a "political party" under A.S. 15.80.10(27) by having registered voters equal to 3% of the vote in the preceding Governor's race; or

    c. <u>third,</u> that they obtain "limited political party" status under A.S. 15.30.025, by submitting a petition with signatures equal to 1% of the votes cast in the preceding Presidential election in Alaska at least 90 days before the general election (and then maintaining that status with votes equal to 3% of the number of votes cast in the next election for President) under A.S. 15.30.025;

9. Prior to 2016, the ALP qualified as a political party, because its 2014 Gubernatorial candidate received more than 3% of the vote for Governor.

10. In 2016, the ALP retained party status, because its candidate for United States Senate received 90,825 votes, or 29.16% of the vote.

11. Also in 2016, the total votes cast at the preceding Presidential election in Alaska, which was 2016, was 318,608. The Libertarian candidate, Gary Johnson, received 18,725 (or 5.88%).

12. The total votes cast at the preceding Governor's election in Alaska, which was in 2018, was 283,134 votes, and the Libertarian candidate in that race, William Toien, received 5,402 (or 1.91%). This caused the ALP to lose its party status.

## The 2020 Election Cycle

13. In early 2020, COVID-19 hit the United States, creating a significant public health crisis.

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
*Alaska Libertarian Party et al. v. Gail Fenumiai, et al.*, No. 3:20-cv-_____
PAGE 3

Case 3:20-cv-00127-JWS   Document 1   Filed 06/03/20   Page 3 of 10

14. In the same period, starting on March 11, 2020, with Governor Dunleavy's public declaration of emergency, the State of Alaska began issuing a number of public health mandates.[1] Among other things, public libraries, museums, and archives were closed on March 16, 2020; bars, breweries, restaurants, food and beverage kiosks or trucks, and other establishments serving food or beverages within the State of Alaska were closed to the public for dine-in service on March 17, 2020; distancing measures were ordered for persons who traveled outside of Alaska on March 17, 2020; elective medical procedures were postponed on March 19, 2020; business, congregations, or gatherings in the Fairbanks North Star Borough and the Ketchikan Gateway Borough were cancelled on March 21, 2020; all schools were cancelled on March 20, 2020; a social distancing/stay at home order was issued March 28, 2020; and an intrastate travel ban was put into place March 28, 2020.

15. On Friday April 24, 2020, Alaska began a phased re-opening plan. That plan required social distancing between persons who are not of the same household.

16. As of May 22, 2020, Alaska began additional re-opening procedures, but still strongly encouraged social distancing and the wearing of masks.[2] The May 22, 2020 re-opening orders are the currently applicable orders.[3]

17. In 2020, the Libertarian Party nominated its candidates for President and Vice President the weekend of May 22, 2020 through May 24, 2020, via an online convention for the

---

[1] See https://covid19.alaska.gov/health-mandates/ (last visited 5/29/2020). The Court can take judicial notice of all of these public declarations. *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012)

[2] https://covid19.alaska.gov/wp-content/uploads/2020/05/05222020-Phase-III-IV-016-Attachment-N-Revised-Social-Religious-and-Other-Gatherings.pdf (last visited 5/29/2020)

[3] https://covid19.alaska.gov/reopen/ (last visited 5/29/2020).

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
*Alaska Libertarian Party et al. v. Gail Fenumiai, et al.*, No. 3:20-cv-_____
PAGE 4

Case 3:20-cv-00127-JWS   Document 1   Filed 06/03/20   Page 4 of 10

first time in its history in light of COVID-19. The selection of these candidates is the precursor to ballot access efforts in many states, since fundraising occurs in connection with the nomination. Those ballot access fundraising efforts have been, and continue to be, depressed due to COVID-19. Dr. Jo Jorgensen, and Spike Cohen were selected as the nominees for President and Vice President, respectively.

18. The Libertarian National Committee and the ALP engaged a local signature gatherer, Scott Kohlhaas, to lead the petition and signature gathering drive in Alaska.

19. Mr. Kohlhaas began that effort approximately two weeks ago, to secure Limited Party Status for the ALP, and to place the Jorgensen/Cohen ticket, and the ALP electors, on the ballot for 2020.

20. Mr. Jon Watts, the ALP Chair, likewise sought concessions from the Defendants in light of COVID-19; for their part, the Defendants offered to permit the ALP to gather signatures via an online method.

21. The ALP sought additional concessions from Defendants, including a reduction of the signature requirement, or an extension of the time to petition, but Defendants have refused, instead placing Plaintiffs, and the general public, at additional risk to the spread of COVID-19 through petition gathering efforts.

22. Further, despite having attempted to do so via its website, email list, and other methods, the ALP has gathered less than 50 signatures via online canvassing of voters in the last 60 days.

23. Regular venues for the gathering and collection of signatures are shut down or severely curtailed.

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
*Alaska Libertarian Party et al. v. Gail Fenumiai, et al.*, No. 3:20-cv-_____ ____
PAGE 5

Case 3:20-cv-00127-JWS   Document 1   Filed 06/03/20   Page 5 of 10

24. People that Mr. Kohlhaas and other petitioners have approached for signatures are appropriately apprehensive to sign a petition in light of the COVID-19 outbreak.

25. Mr. Kohlhaas, on May 28, 2020, petitioned for 3.5 hours (3 PM to 6:30 PM) in front of the Carrs grocery store in Eagle River, Alaska, which is part of the Municipality of Anchorage (MOA). Working only on a Libertarian Limited Political Party petition, he gathered 56 signatures in that time, which is 16 signatures per hour. Normally, he would gather closer to 35 signatures per hour at that same location during a "dinner hour" shift which is the most heavily trafficked. People have displayed observable cues that they are not comfortable being approached with the outbreak of COVID-19.

26. For a successful petition drive of 3,212 valid signatures, normally the ALP would gather 30% to 40% above that threshold, or approximately 5,000 "raw" signatures, to account for invalid signatures.

27. Also, for Kohlhaas and the other petition gatherers, it is physically far more difficult to petition while wearing a mask and petitioners took breaks to use hand sanitizer every 15 or 20 minutes.

28. Kohlhaas and the ALP have hired eight other people to help gather signatures in Alaska. Petition team recruitment and retention right now is very difficult in light of COVID-19. The results they have seen have been terrible. They gathered 149 signatures over the last 10 days to 2 weeks. In a typical year, they would expect at least 1,000 per week for this size team, in this same period.

29. Overall, based on the longtime experience gathering signatures of Mr. Kohlhaas and others, it is over five times as hard to gather signatures right now, and, the Alaska

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
*Alaska Libertarian Party et al. v. Gail Fenumiai, et al.*, No. 3:20-cv-_____ ____
PAGE 6

Case 3:20-cv-00127-JWS   Document 1   Filed 06/03/20   Page 6 of 10

requirement that is normally moderately burdensome in terms of signature gathering is severely burdensome in light of the circumstances on the ground with COVID-19.

30. Finally, Plaintiff Watts delivered paperwork to Defendant Fenumiai, without the required 1% of signatures appended to it for limited party status, and Defendant Fenumiai refused to accept the same to place the Libertarian Party's 2020 Presidential and Vice Presidential ticket and electors on the ballot as a limited party.

## COUNT I – Violation of 42 U.S.C. 1983 (First and Fourteenth Amendment)

31. Plaintiffs reincorporate the preceding paragraphs as if fully written herein.

32. Defendants, using their respective offices and acting under color of state law, violated and are violating Plaintiffs' First Amendment Rights, which have deprived, are depriving, and will deprive them of their rights to Free Speech, Expression, and Association guaranteed to them under the First Amendment of the U.S. Constitution, which rights are clearly established; as well as their rights to Equal Protection of Law under the Fourteenth Amendment to the U.S. Constitution. Defendants thereby subjected themselves under 42 U.S.C. § 1983, to prospective injunctive relief and declaratory relief under 28 U.S.C. §§ 2201, *et seq.*

33. The First Amendment of the U.S. Constitution provides, in relevant part, that "Congress shall make no law ... abridging the freedom of speech..." The Fourteenth Amendment has incorporated the First Amendment to apply to the states, including the State of Alaska, under *Gitlow v. New York*, 268 U.S. 652 (1925).

34. Defendants abused the authority of their respective offices and, while acting under color of law and with knowledge of Plaintiffs' established rights, used their offices to violate their First and Fourteenth Amendment rights.

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
*Alaska Libertarian Party et al. v. Gail Fenumiai, et al.*, No. 3:20-cv-_____
PAGE 7

Case 3:20-cv-00127-JWS   Document 1   Filed 06/03/20   Page 7 of 10

35. In the past two months, numerous federal courts have addressed what are typically reasonable or at least moderately burdensome but appropriate ballot access or voting requirements, which have become unreasonable and oppressive in light of the COVID-19 outbreak. *Esshaki v. Whitmer*, 2020 U.S. App. LEXIS 14376 (6th Cir. 2020) (concluding petition gathering with the presence of COVID-19 and state orders regarding same created a severe burden and ordering relief); *Libertarian Party of Ill. v. Pritzker*, 2020 U.S. Dist. LEXIS 71563 (ILND 2020) (order permitting previously qualified parties and loosening the signature requirements in light of insurmountable hurdle of COVID-19); *Garbett v. Herbert*, 2020 U.S. Dist. LEXIS 75853 (Dist. Utah, 2020) (reducing signature requirements in light of COVID-19 outbreak); *Democratic Nat'l Comm. v. Bostelmann*, 2020 U.S. Dist. LEXIS 48394, 2020 WL 1320819 (W.D. Wis. 2020) (extending deadline in light of "excruciating dilemma that will soon be faced by eligible voters . . . [to] either venture into public spaces, contrary to public directives and health guidelines or stay at home and lose the opportunity to vote.").

36. Under the prevailing U.S. Supreme Court cases of *Anderson v. Celebrezze*, 460 U.S. 760 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992), the burden is severe, or at least is more than minimal, requiring either strict scrutiny or the flexible approach. In either event, relief is appropriate to: (a) lower the 1% threshold; and/or (b) extend the deadline for the submission of the ALP petition.

37. Plaintiffs seek declaratory relief, and prospective injunctive relief under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202, declaring the challenged Alaska ballot access laws unconstitutional as applied, in contravention of the First and Fourteenth Amendments of

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
*Alaska Libertarian Party et al. v. Gail Fenumiai, et al.*, No. 3:20-cv-_____
PAGE 8

Case 3:20-cv-00127-JWS   Document 1   Filed 06/03/20   Page 8 of 10

the United States Constitution. Plaintiffs further seek their costs and reasonable attorney fees under 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants as prayed for, including:

A. That this Court issue a declaration that the 1% "limited political party" status under A.S. 15.30.025, by submitting a petition with signatures equal to 1% of the votes cast in the preceding Presidential election in Alaska at least 90 days before the general election are unconstitutional as applied to these Plaintiffs, in these circumstances, in contravention of the First, Fifth, and Fourteenth Amendments of the United States.

B. That this Court enter permanent injunctive relief to prohibit enforcement of the challenged ballot access laws under such circumstances or subject to such conditions as this Court finds just and proper.

C. That Plaintiffs be awarded their costs in this action, including reasonable attorney fees under 42 U.S.C. § 1988; and

D. Such other relief as this Court shall deem just and proper.

Respectfully submitted,

/s/ Thomas Amodio
Thomas Amodio
ABA #8511142
Reeves Amodio, LLC
500 L Street, Suite 300
Anchorage, Alaska 99501
907-222-7104 (direct)
907-222-7100 (main)
907-222-7199 (fax)
*tom@reevesamodio.com*

/s/ Christopher Wiest
Christopher Wiest (KY 90725;
OH 0077931)*
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
859/486-6850 (v)
513/257-1895 (c)
859/495-0803 (f)
*chris@cwiestlaw.com*

*\*Pro Hac Vice* Pending

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
*Alaska Libertarian Party et al. v. Gail Fenumiai, et al.*, No. 3:20-cv-_____
PAGE 9

Case 3:20-cv-00127-JWS   Document 1   Filed 06/03/20   Page 9 of 10

## VERIFICATION

I, Jon Watts, for myself and on behalf of Alaska Libertarian Party, pursuant to 28 U.S.C. 1746, declare under penalty of perjury, that I have reviewed the foregoing Complaint, that I am competent to testify in this matter, that the facts contained therein relative to the Alaska Libertarian Party are true and correct to the best of my understanding. Those sections related to the activities of Mr. Kohlhaas, and case law cited by Mr. Wiest are solely within their purview.

Executed on 6/2/2020.

_____
Jon Watts