Christopher Wiest (admitted *pro hac vice*)
KY Bar No. 90725; OH Bar No. 0077931
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
513/257-1895 (v)
859/495-0803 (f)
*chris@cwiestlaw.com*

Thomas Amodio, ABA No. 8511142
REEVES AMODIO LLC
500 L Street, Suite 300
Anchorage, AK 99501
Telephone: (907) 222-7100
Facsimile: (907) 222-7199
*tom@reevesamodio.com*
Co-counsel for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| ALASKA LIBERTARIAN PARTY | : | |
| AND | : | |
| JON WATTS | : | |
|     Plaintiffs | : | |
| v. | : | |
| GAIL FENUMIAI | : | **PLAINTIFFS' REPLY IN SUPPORT OF** |
| In her official capacity as Director of | | **THEIR MOTION FOR PRELIMINARY** |
| Elections | : | **INJUNCTION WITH DECLARATION** |
| | | **OF SCOTT KOHLHAAS IN SUPPORT** |
| AND | : | |
| KEVIN MEYER | : | CIVIL ACTION NO. |
| In his official capacity as Lt. Governor | | 3:20-cv-127 |
| | : | |
|     Defendants | | |
| | : | |

1

## I. Reply Introduction

Defendants do not (and cannot) dispute that COVID-19 creates unprecedented burdens on society, and, indeed, on these Plaintiffs. Their argument essentially boils down to an argument that Plaintiffs should have had a crystal ball or otherwise somehow predicted that a once-in-a-hundred-year global pandemic would interrupt and disrupt society and their signature gathering efforts. They do this by comparing the Plaintiffs with other groups who undertook to gather more signatures well in advance of the COVID-19 outbreak (because, frankly, those groups had to collect more signatures, which needed to be gathered well in advance), or by making the comparison between Plaintiffs and candidates who had to gather less than 100 signatures that could be gathered in a few weeks. Neither comparison is appropriate.

Certainly, if the COVID-19 global pandemic was a foreseeable event, it would be wholly appropriate to make the argument that Plaintiffs should have begun earlier, such as planning around the Alaska winter, which occurs every year and makes petitioning challenging. For foreseeable events, the failure to plan for and take steps to avoid pitfalls can clearly be blamed upon the Plaintiffs. But the COVID-19 pandemic was not foreseeable. No one saw it coming. And Plaintiffs began gathering signatures almost immediately after the Governor lifted his stay-at-home order.

Defendants argue that the Governor's orders do not prevent them currently from engaging in the act of petitioning, while ignoring the fact that other Government actors have closed the locations that Plaintiffs and their petitioners are normally are able to collect signatures at: public spaces where people gather. Defendants also completely ignore the public health risk that the law in question that they vigorously defend forces the petitioners to engage in (not to mention the risk to members of the general public whom the petitioner's solicit signatures from).

**II. Facts**

This Court directed the Plaintiffs to obtain a report, from their petitioning team, and Plaintiffs have done so to the best of their ability.[1]

As of July 2, 2020, Plaintiffs have gathered a total of 1,959 signatures. (Declaration Kohlhaas, attached). Since June 11, 2020, they have gathered 1,664 signatures in a three-week period. *Id.* The Plaintiffs, through their petitioner team, have been gathering signatures every day since June 11, 2020 (and before that). *Id.* Their most experienced petition gatherer has experienced some level of success (but nothing like a normal year), while others have not. *Id.* It thus appears, ***if*** – and only if – the Plaintiffs' luck and trend holds up, ***if*** COVID does not spike in Alaska like it has in other states in the south such as Florida and Texas,[2] ***if*** Alaska's Governor does not lock the state down again in response to such a spike or a risk of a spike, ***if*** Mr. Thigpen does not get sick or come down with COVID and remains on the job, and ***if*** the results they have achieved to date continue (something that is also not certain) at the same rate, they *may* be able to hit 4,566 raw signatures by the August 5, 2020 deadline.[3]

That would, in turn, mean that the validity rate would need to be 70.3% or higher, which is at the very top of the range used by Mr. Kohlhaas in calculating validity, adding yet another "***if***," in terms of validity rate to the equation. That is a lot of "***ifs***." In the meantime, Plaintiffs,

---

[1] As explained in Mr. Kohlhaas' report, managing a team of petitioners is a difficult proposition and petition gatherers are not always the most responsive. Plaintiffs have undertaken best efforts to comply with the Court's order.

[2] https://www.washingtonpost.com/national/reopening-reverses-course-in-texas-and-florida-as-coronavirus-cases-spike/2020/06/26/72eb5f6a-b7c5-11ea-a510-55bf26485c93_story.html (last visited 7/3/2020).

[3] That calculation is based on 554 signatures per week, or 79 signatures per day. As of the date of this filing, there remains 33 days left to turn in the petition. Using the math and rate, and making the assumptions that **all** of the "ifs" are met, and the success rate remains the same, the Plaintiffs will gather another 2,607 more "raw" signatures, for a total of 4,566 signatures.

3

Case 3:20-cv-00127-JWS   Document 14   Filed 07/03/20   Page 3 of 11

and their contract petitioners, continue to spend resources, time, effort, and money pursuing a petition drive in most difficult circumstances.

Notably, as before, the online signature gathering results have been abysmal: despite repeatedly soliciting signatures, only 12 more have come in through electronic signature gathering methods, proving that in person signature gathering remains the only viable option. *Id.*

### III. Law and Argument

#### A. Plaintiffs have standing

Defendants begin by arguing that Plaintiffs lack standing. They are incorrect. To show standing, Plaintiffs must: (1) directly suffered an injury in fact, (2) the injury must be fairly traceable to the defendant's conduct, and (3) a favorable court decision must be likely to redress the injury. *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1019 (9th Cir. 2002).

**Any** relief that this Court might award, including even a modest reduction in the signature threshold, will redress the injury that the Plaintiffs currently suffer, which is fully traceable to the challenged ballot access law. Plaintiffs have not yet met the requirements of the statute, and, it appears, unless the stars continue to align perfectly between now and August 5, 2020, will not be able to do so. It is likely to be the case that Plaintiffs will be slightly under the required number of signatures on August 5, 2020. Thus, even a slight reduction in the number of required signatures will likely be significant.

Mr. Watts, as a voter and Alaska Libertarian Party member who wishes to vote for that Party's candidates, and the Alaska Libertarian Party, as an organization comprised of registered voters, which is forced to expend resources to comply with the statute that Plaintiffs are challenging, have standing to challenge Alaska's limited party election laws. *Storer v. Brown*, 415 U.S. 724 (1974) (standing found, even where election law challenger could meet the

requirement); *Kelly v. McCulloch*, 2010 U.S. Dist. LEXIS 154735 (D. Mon. 2010) (voters have standing to challenge ballot access laws where they identify the candidate they wish to vote for but cannot due to ballot access laws); *Democratic Nat'l Comm. v. Reagan*, 2018 U.S. Dist. LEXIS 77690 (D. Az. 2018) (where a political party is adversely impacted or potentially adversely impacted by a challenged elections regulation, they have standing to bring suit AND compelling a political party to devote resources to comply with a regulation gives it standing); *Kelly v. McCulloch*, 405 Fed. Appx. 218 (9th Cir. 2010) (voters have standing to challenge ballot access laws); *Thorsted v. Munro*, 75 F.3d 454 (9th Cir. 1995) (same).

### B. Plaintiffs' Complaint states a claim

Defendants claim that the injury and burden here is *de minimis* and thus Plaintiffs fail to state a claim. That assertion finds absolutely no support in the case law. Plaintiffs have stated a claim, for the same reasons they are entitled to a preliminary injunction, and incorporate their response below.

### C. Plaintiffs are entitled to a preliminary injunction

The gist of the Defendant's response is threefold: first, they argue that Plaintiffs have not been diligent; second, they argue that others, not similarly situated, have been able to achieve signature thresholds because, it appears, they began well before the COVID-19 pandemic occurred; and third, they argue that the threshold is not really burdensome this year, because it is not burdensome in normal years.

Defendants contentions are incorrect across the board.

As noted before, and as the updated declaration of Mr. Kohlhaas confirms, it is readily apparent that the signature threshold will be impossible to meet by the August deadline (or at all) in 2020 if Plaintiffs were to circulate **solely online**. In person signature gathering is thus

5

necessary. Defendants have presented no evidence whatsoever that would suggest that electronic signature gathering is an actual viable alternative.

Turning to in person gathering, Defendants first argue that Plaintiffs have not been diligent. This assertion is belied by the Supplemental Declaration of Mr. Kohlhaas. He declaration demonstrates that Plaintiffs have been diligent, and, in fact, have gathered 1,959 signatures as of July 2, 2020. His declaration demonstrates the significant difference (as can be seen from the results) between experienced petitioners and inexperienced petitioners, and that this difference is more pronounced during the COVID-19 outbreak. His declaration demonstrates that Plaintiffs will continue to be diligent: they simply have no choice but to exhaust their best efforts to meet the required signatures by the required deadline. But even then, it appears that they will probably come up short: perhaps barely short, but short nevertheless.

The Ninth Circuit has held that the burden on plaintiffs' rights should be measured by whether, in light of the entire statutory scheme regulating ballot access, "reasonably diligent" candidates can normally gain a place on the ballot, or whether they will rarely succeed in doing so. *Libertarian Party of Washington v. Munro*, 31 F.3d 759, 761-762 (9th Cir. 1994) (*quoting Storer v. Brown*, 415 U.S. 724, 742 (1974)).

The comparisons Defendants make, to petition efforts that began well before the COVID-19 outbreak are simply not helpful. Indeed, if Plaintiffs could have foreseen the COVID-19 pandemic, and planned for it, they certainly would have begun their efforts last fall, when public gatherings were opened and crowded, crowds were present, and COVID-19 was nowhere to be found. But, COVID-19 was not foreseeable: not by Plaintiffs, not by Government officials, indeed not by anyone. To argue, and make the comparison that Defendants make, that someone who fortuitously began early is a comparator is simply inappropriate.

6

Defendants next argue that the Governor's stay at home orders, through the middle of May, are not *the* cause of the burden. Certainly, they are not the only cause. But the fact remains that the State of Alaska was locked down until the end of May. And other public official's orders that closed public spaces are still in force.[4] And thus, Government action is certainly partially a factor in the difficulty and burden in terms of the ability to petition, but, more to the point, Government activity and burdens are the very essence of the requirement to achieve the threshold: a Alaska statute is being enforced against Plaintiffs in conditions that are difficult, and perhaps impossible, to comply with.

Finally, Defendants argue that the burden is "de minimis" or "slight." Those contentions are simply erroneous, both factually and legally. It is easy to make light of the difficulty of signature gathering sitting in the comfort of an office building by making an argument. It is quite another thing to present evidence that it is as easy as Defendants make it out to be. Defendants offer not one iota of proof to contradict Mr. Kohlhaas' initial and supplemental declarations about the severe difficulties experienced by petitioners. Defendants do not, for instance, come in with a declaration of a signature gatherer who in any way contradicts the declaration of Mr. Kohlhaas. That is telling, in no small part, because it not only demonstrates that Mr. Kohlhaas' testimony on this score is unrebutted, but also because it suggests that there is no one able or willing to rebut it.

---

[4] http://www.anchoragelibrary.org/about/about-apl/library-news/apls-safe-opening-plans-and-services/ (last visited 7/3/2020) (while the Library is partially open, it is clearly closed for petitioning requirements); http://alaskabaseballleague.org/view/alaskabaseballleague/ (last visited 7/3/2020) (baseball season cancelled for 2020); https://sites.google.com/alaska.edu/coronavirus/status?authuser=0 (last visited 7/3/2020) (suggesting gathering activities that would be conducive to petitioning large groups of people are not going on).

Under the prevailing U.S. Supreme Court cases of *Anderson v. Celebrezze*, 460 U.S. 760 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992), courts are first instructed to look at the burden of the requirement. Where burden is severe, strict scrutiny applies. *Id.* Where the burden is "more than minimal" the flexible approach is used, which weighs the government's asserted interest against the means by which it has chosen to pursue it. *Id.*

This is not, as Defendants argue, a *de minimis* burden case. Further, while signature gathering cases involving thousands of signatures are never a *de minimis* burden case, the situation on the ground this year makes that doubly true. Plaintiffs submit it is a "severe" burden case, but even if it is not, it is at least a modest to significant burden, which warrants a weighing of the government's asserted interest against the means that it has chosen to pursue it. *Id.* That weighing does not justify the full 1% threshold <u>this year</u>.

Given that Plaintiffs have successfully gathered 1,959 signatures as of July 2, 2020 (which means that Plaintiffs, per their usual experience, have gathered between 1,175 and 1,371 valid signatures to date), and given that Plaintiffs continue to gather signatures at a rate of approximately 554 signatures a week (332 to 387 valid per week), or 79 per day, Plaintiffs acknowledge that a complete lifting of the signature requirement is likely not appropriate and does not take into account the asserted state interests.

Thus, Plaintiffs respectfully submit that this Court can fashion appropriate relief by lowering the threshold. Plaintiffs have no plans to stop their efforts unless they are legally unable to continue those efforts due to lock down orders. They submit that reducing the threshold by 50% to 1,606 signatures would give them full and complete relief. Even lowering the current signature requirement of 3,212 signatures to 75% of the normal number, or 2,409 signatures, is significant relief, which Plaintiffs will probably meet unless Alaska sees another

8

Case 3:20-cv-00127-JWS   Document 14   Filed 07/03/20   Page 8 of 11

COVID-19 spike in the next month, such as is the case in Florida or Texas, or in the event that the Governor locks the state down again to prevent such a spike.

Under *Fair Maps Nev. v. Cegavske*, 2020 U.S. Dist. LEXIS 94696 (D. Nevada May 29, 2020), it is not appropriate to compare Plaintiffs efforts to those who began gathering signatures last year. Rather, it is appropriate to see if anyone this year has met the threshold at issue. And, as Defendants admit, no one at this time has met the limited party status. Three weeks after their filing on the Preliminary Injunction, it appears that Plaintiffs have an outside chance of reaching the threshold. But that is no reason to wait, or to deny relief.

In the past two months, numerous federal courts have addressed ballot access or voting requirements which, in normal times, are typically viewed as reasonable or appropriate even though they are moderately burdensome, but which have become unreasonable and oppressive in light of the COVID-19 outbreak. *Esshaki v. Whitmer*, 2020 U.S. App. LEXIS 14376 (6th Cir. 2020) (concluding petition gathering with the presence of COVID-19 and state orders regarding same created a severe burden and ordering relief); *Libertarian Party of Ill. v. Pritzker*, 2020 U.S. Dist. LEXIS 71563 (ILND 2020) (order permitting previously qualified parties and loosening the signature requirements in light of insurmountable hurdle of COVID-19); *Garbett v. Herbert*, 2020 U.S. Dist. LEXIS 75853 (Dist. Utah, 2020) (reducing signature requirements in light of COVID-19 outbreak); *Democratic Nat'l Comm. v. Bostelmann*, 2020 U.S. Dist. LEXIS 48394, 2020 WL 1320819 (W.D. Wis. 2020) (extending deadline in light of "excruciating dilemma that will soon be faced by eligible voters . . . [to] either venture into public spaces, contrary to public directives and health guidelines or stay at home and lose the opportunity to vote.").

Application of the challenged statutes, as applied this year, with the situation now presented by the pandemic and as experienced by the Plaintiffs, who have demonstrated reasonable diligence, demonstrates a severe, constitutionally unacceptable burden.

**D. Remedies**

Plaintiffs seek a reduction in the threshold, by reducing the threshold by 50% to 1,606 signatures, or to 75% of the normal number, or 2,409 signatures. Given the concerns raised by the Defendants on the deadline, if the relief on the signature requirements is granted, there is no reason to extend the deadline.

**IV. Conclusion**

Plaintiffs respectfully request the preliminary injunctive relief of reducing the number of required signatures that they must turn in.

Respectfully Submitted,

/s/Christopher Wiest_____
Christopher Wiest (admitted *pro hac vice*)
KY Bar No. 90725; OH Bar No. 0077931
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
513/257-1895 (c)
859/495-0803 (f)
*chris@cwiestlaw.com*

/s/Thomas Amodio_____
Thomas Amodio, ABA No. 8511142
REEVES AMODIO LLC
500 L Street, Suite 300
Anchorage, AK 99501
Telephone: (907) 222-7100
Facsimile: (907) 222-7199
*tom@reevesamodio.com*
Co-counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that I have served the foregoing upon all Counsel or parties, by filing a copy of the foregoing in the Court's CM/ECF system this 3 day of July, 2020.

/s/Christopher Wiest